UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| PEGGY NELSON, CINDY VECCHIONE, MIRELA LEMONS, and JACQUELYN BROWN,<br><br>Plaintiffs,<br><br>vs.<br><br>HALIMA ACADEMY CHARTER SCHOOL, HALIMA ACADEMY GOVERNING BODY, SAIDAH PIRES, MARC DEAL, YOLANDA PRIDDY, and JENNIFER LATHAM,<br><br>Defendants. | 03:05-CV-0171-LRH (RAM)<br><br>ORDER |

Presently before the court is Plaintiffs', Peggy Nelson, Cindy Vecchione, Mirela Lemons and Jacquelyn Brown, motion for partial summary judgment (#15[1]). Defendants, Halima Academy Charter School, Halima Academy Governing Body, Saidah Pires, Marc Deal, Yolanda Priddy and Jennifer Latham, have filed an opposition (#17), the which Plaintiffs have replied (#18).

**FACTUAL AND PROCEDURAL BACKGROUND**

Halima Academy is a charter school formed pursuant to Nevada Revised Statute ("NRS") 386.500, *et seq*., and sponsored by the State of Nevada Board of Education. It provides educational services to at-risk pupils in Washoe county. Plaintiffs are all former employees of

---

[1] References to (#XX) refer to the court's docket.

1  Halima Academy who were terminated without cause[2].

2  When Plaintiffs were hired they were provided an employment manual defining the terms of their employment. Regarding termination, the manual provided that all "employment . . . with Halima Academy is 'at will' which means that your employment can be terminated with or without cause, and with or without notice, at any time . . . except as otherwise provided by law." D.'s Opp. To P.'s Mot. For Partial Summ. J Appendix A 00113. The manual also provided, however, that invalid or unenforceable provisions in the manual would be subject to exclusion from the manual's terms. *Id.* at 00104.

Plaintiffs filed suit after they were terminated without cause. The present motion for partial summary judgment requires an interpretation of NRS section 386.595 to determine whether Plaintiffs are entitled to the protections of NRS sections 391.311 to 391.3197 inclusive. If granted the protection of these statutes, Halima Academy would not have been able to terminate Plaintiffs' employment without cause.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th

---

[2] The court recognizes that Plaintiffs held varying positions within Halima Academy and that at least one claims constructive, rather than actual, termination. The fact that termination occurred without cause has not been contested, nor affirmatively proved. For the purposes of this motion for partial summary judgment, however, the court need not distinguish between Plaintiffs and will assume the terminations were without cause. The specific legal question is whether certain provisions of the Nevada Revised Statutes apply to employees of a charter school. Once this question is resolved, the question of how that resolution affects the individual plaintiffs can be brought before the court.

1  Cir. 2001).

2        The moving party bears the burden of informing the court of the basis for its motion,
3  along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v.*
4  *Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the
5  moving party must make a showing that is "'sufficient for the court to hold that no reasonable
6  trier of fact could find other than for the moving party.'" *Calderone v. United States*, 799 F.2d
7  254, 259 (6th Cir. 1986). *See also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141
8  (C.D.Cal. 2001). For those issues where the moving party will not have the burden of proof at
9  trial, the movant must point out to the court "that there is an absence of evidence to support the
10 nonmoving party's case." *Catrett*, 477 U.S. at 325.

11                                   **DISCUSSION**

12       This case turns squarely on the meaning of the word "may."

13       NRS section 386.595(3) (2004)[3] provides:

14       Except as otherwise provided in subsection 2, the governing body of a charter
      school may make all employment decisions with regard to its employees pursuant
15       to NRS 391.311 to 391.3197, inclusive, unless a collective bargaining agreement
      entered into by the governing body pursuant to chapter 288 of NRS contains
16       separate provisions relating to the discipline of licensed employees of a school.

---

[3] NRS section 386.595 was amended in 2005. Subsection 3 is now listed as subsection 2 and reads:

      The governing body of a charter school may make all decisions concerning the
      terms and conditions of employment with the charter school and any other matter
      relating to employment with the charter school. In addition, the governing body
      may make all employment decisions with regard to its employees pursuant to NRS
      391.311 to 391.3197, inclusive, unless a collective bargaining agreement entered
      into by the governing body pursuant to chapter 288 of NRS contains separate
      provisions relating to the discipline of licensed employees of a school.

      This subsequent modification of the section at issue is not retroactive. However, it lends credence to the court's forthcoming conclusion that the legislature intended "may" to be read as permissive rather than mandatory. Were this not the case, the legislature would not have amended the statute to grant even more discretion to the charter school's governing body regarding the terms and conditions of employment within the charter school without changing the use of the word "may."

3

1    The issue before the court is whether the language of this provision of the NRS requires charter schools to comply with the provisions of NRS 391.312[4] when no collective bargaining agreement exists or merely suggests that a charter school follow the statute. This issue is one of first impression, as no court has yet analyzed the language of NRS 386.595.

The vehicle by which this question comes to a federal district court is the due process clause. In being terminated without cause, Plaintiffs argue that their procedural due process rights were violated. The Fourteenth Amendment provides that no state shall "deprive any person life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1. One of the property interests protected by this amendment is "the security . . . that a person has already acquired in specific benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). Thus, the first inquiry in a procedural due process analysis is to determine whether the plaintiff has a legitimate claim of entitlement to a particular benefit. *See id.* at 577.

"State law, or some other independent source, establishes the parameters of an individual's substantive interest. . . ." *Lawson v. Umatilla County*, 139 F.3d 690, 692 (9th Cir. 1998). In this particular case, it is alleged that the state laws providing a protected interest in employment to public school teachers and administrators apply equally to teachers and administrators in charter schools. The inquiry is one of statutory interpretation and, therefore, is a matter of law for the court to decide.

In instances where the words of a statute have a definite meaning, a court will not look beyond the plain language of the statute unless it is clear the definite meaning was not intended. *Harris Associates v. Clark County School Dist.*, 81 P.3d 532, 534 (Nev. 2003). However, when a statute is ambiguous, the drafter's intent becomes the controlling interpretive factor and the statute will be construed in accordance "with what reason and public policy would indicate the legislature intended." *Id.*, *quoting McKay v. Bd. of Supervisors*, 730 P.2d 438, 442 (Nev. 1986).

---

[4] NRS 391.312 provides that teachers and administrators in public schools may only be suspended, dismissed or not re-employed for specific enumerated reasons. In essence, section 391.312 provides that public school teachers and administrators cannot suffer adverse employment actions without cause.

4

A statute is ambiguous if it is susceptible to more than one natural or honest interpretation. *Banegas v. SISS*, 19 P.3d 245, 247 (Nev. 2001).

In Nevada, cases which seek to resolve whether "may" is treated as permissive or mandatory are considered under the rubric of words with a definite meaning. *See State of Nev. Employees Ass'n, Inc. v. Daines*, 824 P.2d 276, 278 (Nev. 1992) (stating that may "is permissive and 'shall' is mandatory unless the statute demands a different construction to carry out the clear intent of the legislature" or unless "the purpose of the statute requires that construction"). Thus, the court begins with the assumption that the use of "may" in NRS 386.595(3) reads as a permissive action. Only if Plaintiffs can demonstrate that the clear intent of the legislature or the clear purpose of the statute requires a mandatory meaning shall the statute be read as such.

Turning to the legislative history surrounding the enactment of the charter school statutes, Plaintiffs' admit that there are no direct statements to guide the court in determining whether the intent of the legislature was to mandate that charter schools follow the same hiring and firing guidelines as public schools. The information that does exist does not cut particularly well for either side in this argument.

Recognizing that the legislative history is not strongly on their side, Plaintiffs make several other arguments that the term "may" should be read as mandatory. Plaintiff's first argument relies on the statutory construction maxim that authority conferred upon public officials or agencies which affects the rights of the public or third persons is considered mandatory. *See Nev. Real Est. Comm. v. Ressel*, 294 P.2d 1115, 1116 (Nev. 1956) (noting that "may" is often construed as "shall" when used to define the duties of a public officer). While the court recognizes this rule of statutory construction, it finds the rule inapplicable in this instance. This is not a case where a public official has been requested to act based on certain relevant factors, such as the distribution of funds when a budget surplus exists as occurred in *Daines* or the issuance of an injunction as occurred in *Ressel*.

Instead, the court is faced with a situation where the legislature worked to create a novel solution to the education needs of this state and country. One of the hallmarks of a charter school is its freedom to try novel teaching techniques while being held accountable to both the school

board and the general public.  In fact, as part of the enactment of these statutes, the legislature made sure to note that they intended to provide "a method to experiment with providing a variety of independent public schools to the pupils of this state," "[a] procedure by which the positive results . . . may be replicated and the negative results may be identified and eliminated," an opportunity to "[e]ncourage the use of different and innovative teaching methods," and "new professional opportunities for teachers . . . including . . . the opportunity to increase the accessibility and responsibility of teachers . . . for the program of learning offered."  NRS 386.500 *et seq.*, Reviser's Note.  Thus, the court notes that this is not a situation where a public official should be required to follow a permissive mandate as if it were mandatory.  To do so would potentially infringe on the stated purposes of increasing teacher accountability, experimenting with public schools, and encouraging different and innovative teaching methods.  Accordingly, the court finds that the general maxim which treats certain permissive mandates as mandatory when public officials may affect the rights of others is not appropriately applied to the statute at issue in this matter.

      Plaintiffs next rely on the doctrine of *expressio unius est exclusio alterius* to argue that because the statute expresses two ways in which a charter school may hire and fire employees, it necessarily excludes any others.  While this concept does aid Plaintiffs, the court does not see the statute expressed in a manner that is truly conducive to the *expressio unius* concept.  Only two options are provided and they are not combined in a manner that makes it clear the legislature intended to limit the available options to just those two.  Also, the aforementioned purpose behind the enactment of the entire statutory scheme would seem hindered if the charter schools were limited in their employment options to either following the Nevada public school statutes or entering into or following a collective bargaining agreement.  As such, the court does not find that this rule of statutory construction requires a finding that "may" be read as a mandatory directive.

      Finally, Plaintiffs contend that reading "may" as a mandatory directive places NRS 386.595 in harmony with other provisions of the NRS.  Specifically, Plaintiffs point to NRS 391.3197 which provides that a postprobationary employee of a school district or charter school

1  remains a postprobationary employee when switching jobs under certain circumstances.  The
2  court does not see this statute as requiring a mandatory reading of "may."
3       A postprobationary employee of the school district is one which has proceeded past a two
4  year probationary period where the employee is given only one year contracts which do not have
5  to be renewed.  This status does not mean that all postprobationary employees must be
6  terminated only for cause.  It simply means that they are guaranteed a renewal unless they are
7  terminated.  While working in a standard public school, this means that they will be renewed
8  unless terminated for cause.  However, it does not mean that they cannot be terminated at will if
9  working for a charter school - provided charter schools have the authority to terminate in such a
10 manner.  Accordingly, the court does not see any lack of harmony within the statutory scheme by
11 construing the word "may" as a permissive mandate.
12      Considering Plaintiffs' arguments and evidence in support of reading the term "may" as a
13 mandatory directive, the court concludes that Plaintiffs have neither demonstrated a clear
14 legislative intent to create a mandatory directive nor shown that the clear purpose of the statute
15 can be effectuated only through considering the language as mandatory.  The legislature, in
16 drafting comprehensive legislation designed to improve public schooling through increased
17 experimentation within certain schools, chose to provide that those newly created schools "may
18 make all employment decisions with regard to its employees pursuant to NRS 391.311 to
19 391.3197. . . ."  NRS 386.595(3) (2004).  The Nevada legislature is presumed to be fully aware
20 of the fact that "may" indicates a non-binding directive and, in fact, the legislature has quite often
21 used the word "shall" when seeking to mandate certain actions in other contexts.  The simple fact
22 is that the legislature made a decision to use the word "may" rather than the word "shall."  The
23 court is not inclined to legislate from the bench when there is no clear demonstration that the
24 legislature erred in its draftsmanship.  If the legislature truly intended the directives in NRS
25 386.595 to be mandatory, yet chose to use the word "may" rather than "shall," it is the
26 legislature's prerogative to correct the language.  However, until such a correction is made, the
27 court concludes that the legislature's use of the word "may" was intentional and will construe the
28 language of NRS 386.595 to create only an option of following the public school hiring and

1  firing rules contained in NRS 391.311 to 391.3197.

2  Accordingly, Plaintiffs' were not entitled to be terminated only for cause pursuant to NRS 391.311 to 391.3197.  The court, however, makes no determination on the justifications, or lack thereof, behind Plaintiffs actual termination.  Neither does the court make any other factual or legal determinations regarding this matter.  The sole import of this ruling is that former NRS section 386.595(3) does not mandate that employment decisions must be made pursuant to NRS 391.311 to 391.3197.

It is HEREBY ordered that Plaintiffs' motion for partial summary judgment (#15) is DENIED.

DATED this 13th day of July, 2006.

_____
LARRY R. HICKS
United States District Judge